UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBAS HOSSENINI,<br><br>        Petitioner,<br><br>v.<br><br>DHS ICE, Chief Counsel,<br><br>        Respondent. | Case No.: 18-CV-1771 JLS (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Abbas Hossenini's Petition for Writ of Habeas Corpus ("Pet.," ECF No. 1) under 28 U.S.C. § 2441. Petitioner, proceeding *pro se*, is currently in the custody of the United States Immigration and Customs Enforcement ("ICE"), an agency of the United States Department of Homeland Security ("DHS"). Pet. 1–3.[1] Petitioner alleges Fifth Amendment due process and Eighth Amendment violations arising out of his prolonged detention without a bond hearing for more than twenty-one months. *Id.* at 3, 49. Petitioner requests release from ICE custody either in California or via deportation to "anywhere in the world." *Id.* at 49.

---

[1] Pin citations to the Petition refer to the CM/ECF page numbers electronically stamped at the top of each page.

1

On August 19, 2019, the Court issued an Order pursuant to 28 U.S.C. § 2243 for Respondent to show cause why the Petition should not be granted. *See* ECF No. 12. As of the date of this Order, the Court has received no response. After a thorough review of Petitioner's arguments and evidence and the law, the Court **GRANTS IN PART** and **DENIES IN PART** the Petition.

## BACKGROUND

Petitioner, a citizen and native of Afghanistan, was granted refugee status by the United Nations in 2012 in Turkey. ECF No. 10 ("Letter") at 3. Petitioner possessed no travel documents and only had a temporary ID card. *Id.* United States Immigration Officials in Turkey knew that Petitioner had no travel documents yet granted him admission into the United States. *Id.*; Pet. at 50. Petitioner was admitted into the United States on or around September 25, 2012, Pet. at 20, and became a Legal Permanent Resident on June 30, 2014. *Id.* at 8.

While residing in the United States, Petitioner was charged with and pled guilty to multiple criminal offenses. *See id.* at 20–46. Notably, Petitioner was convicted for violating California Penal Code section 243(e)(1)—for domestic violence—on August 15, 2014, and for violating protective and stay away orders intended to prevent domestic violence on May 28, 2015, and June 13, 2016. *Id.* at 20–21, 25–28, 35–36, 41–43.

On October 21, 2016, ICE took Petitioner into custody "[p]ursuant to section [] 237(a)(2)(E)(i) of the Immigration and Nationality Act as amended for a crime of domestic violence." *Id.* at 20. Because Petitioner was convicted of a crime of domestic violence within five years of entry into the United States, Petitioner was subject to removal. *Id.* at 21. On July 31, 2017, an Immigration Judge ordered Petitioner removed from the United States to Afghanistan. *Id.* at 16. Petitioner has not been removed from the United States and remains in ICE custody at the Otay Mesa Detention Center. *Id.* at 2–3.

Petitioner alleges that his "deportation officer told [him] that if [he] was not deported in six months [ICE would] release [him] in the USA." *Id.* at 3, 49. Petitioner alleges that ICE requested that Petitioner provide his travel documents so that he could be deported to

Afghanistan. *Id.* at 49. Petitioner alleges he has no travel documents from Afghanistan. *Id.* On August 2 and 7, 2018, Petitioner alleges he called the Afghan Consulate, which advised him that it had processed his paperwork and sent it to ICE. Letter at 7. Petitioner has not been advised, however, of the Consulate's response or the outcome of those proceedings. *See id.* at 3–8. Instead, Petitioner has received numerous notices of "Decision to Continue Detention." *See id.* 9; Pet. at 8–10. These notices acknowledge that ICE conducted a review of Petitioner's file record and determined that he would not be released from custody. *See* Letter at 9; Pet. at 8–10. The most recent notice of "Decision to Continue Detention" provided by Petitioner is dated August 15, 2018. Letter 9.

On July 3, 2018, Petitioner filed this Petition for Writ of Habeas Corpus. *See generally* Pet. On August 19, 2019, the Court issued an Order to Show Cause to Respondent, Chief Counsel for DHS/ICE, why the Petition should not be granted. ECF No. 12. As of the date of this Order, Respondent has neglected to submit any response to the Court.

## ANALYSIS

### I. Jurisdiction

As a preliminary matter, the Court must determine whether it has jurisdiction to hear the merits of Petitioner's claim. A federal district court has jurisdiction to hear habeas claims under 28 U.S.C. § 2241. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Jurisdiction is proper "'with respect to the application of [sections1221 through 1232] to an individual alien against whom proceedings under such part have been initiated.'" *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (quoting 8 U.S.C. § 1252(f)(1)). Although there are some statutory limitations barring judicial review of the Attorney General's exercise of discretion in removal proceedings, "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Id.* at 688; *see also Jennings v. Rodriguez*, 583 U.S. ___, 138 S. Ct. 830, 841 (2018) (holding that 8 U.S.C. § 1226(e) does not bar constitutional challenges to the "statutory framework" of the
///

Government's detention authority). Accordingly, the Court may proceed to analyze the merits of the Petition.

## II. Prolonged Detention

Petitioner claims he has been subjected to prolonged detention without bond. Pet. at 20. Any alien who has been convicted of a crime of domestic violence is subject to removal from the United States. 8 U.S.C. § 1227(a)(2)(E)(i). Aliens who violate protective orders also may be removed. 8 U.S.C. § 1227(a)(2)(E)(ii). "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed." 8 U.S.C. § 1226(a). Typically, detained aliens are removed within ninety days—the "removal period." 8 U.S.C. § 1231(a)(1)(A). Criminal aliens—including those convicted of domestic violence and violation of a protective order—"may be detained beyond the removal period" at the discretion of the Attorney General. 8 U.S.C. § 1231(a)(6).

However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Zadvydas*, 533 U.S. at 699. The post-removal-period detention is presumptively limited to six months. *Id.* at 701. "This . . . does not mean that every alien not removed must be released after six months"; the presumptive six-month period is rebuttable. *Id.* Following the six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Detention beyond this period is "prolonged" and "requires that adequate procedural safeguards be in place to protect against the erroneous deprivation of liberty." *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011). An alien subjected to prolonged detention is "entitled to a bond hearing before an immigration judge ("IJ") and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." *Id.* at 1092.

Here, Petitioner has been subjected to prolonged detainment. Petitioner was convicted of crimes of domestic violence and violating a protective order, *see* Pet. at

20–48, and, therefore, may be removed from the United States. *See* 8 U.S.C. §§ 1227(a)(2)(E)(i)–(ii). ICE took Petitioner into custody on October 21, 2016, and held him pending removal proceedings, Pet. at 3, 20, as authorized by statute. *See* 8 U.S.C. § 1226(a). On July 31, 2017, the IJ ordered Petitioner removed from the United States. Pet. at 16. Petitioner filed this Petition for Writ of Habeas Corpus almost a year later. *See* ECF No. 1. Thus, Petitioner was detained beyond the presumptively reasonable six-month period at the time of filing.

Petitioner also demonstrates "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Petitioner states that he has never possessed travel documents from either Afghanistan or Turkey dating back to his authorized entry into the United States via Turkey. Pet. at 49. Petitioner claims that he has contacted the Consulate of Afghanistan to inquire into the status of obtaining travel documents required to deport him to Afghanistan. Letter at 5. Petitioner alleges the Consulate told him that it was "done with [his] case" and that it referred him back to ICE and his deportation officer. *Id.* According to Petitioner, Turkey also has denied him entry because he is neither a citizen nor legal resident of Turkey. Pet. at 12.

The Government, in failing to respond to the Court's Order to Show Cause, ECF No. 12, has not "respond[ed] with evidence sufficient to rebut" Petitioner's showing, as required. *See Zadvydas*, 533 U.S. at 701. From the records provided by Petitioner, it appears the only review of Petitioner's custody were ICE administrative reviews. *See* Pet. at 8–10; Letter at 9. Although the notices of these reviews state that a "travel document from the Government of Afghanistan is expected," *id.*, the Court is not satisfied that these words constitute sufficient rebuttal evidence. Moreover, these notices evidence that Petitioner has not received a bond hearing before a neutral arbiter; rather, it appears that only ICE has reviewed the merits of Petitioner's continued detention. *Id.* Accordingly, the Court finds that ICE has held Petitioner in prolonged detention without adequate procedural safeguards.

## III. Required Bond Hearing

The Ninth Circuit has established that detained aliens have a right to bond hearings after prolonged detention. *See Diouf*, 634 F.3d at 1091. Aliens held beyond the six-month threshold "must be afforded the opportunity to challenge their continued detention in a hearing before an [IJ]." *Id.* at 1092. Consequently, courts may order the Attorney General—including DHS and ICE—to provide a bond hearing within a specified timeframe. *See Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1147 (N.D. Cal. 2018) (requiring a bond hearing before an IJ within 15 days); *Singh v. Barr*, No. 18-CV-2741-GPC-MSB, 2019 WL 4168901, at *12 (S.D. Cal. 2019) (same); *Trinidad v. Sessions*, No. 3:17-cv-06877-JD, 2018 WL 2010618, at *3 (N.D. Cal. 2018) (30 days); *Crespo v. Baker*, No. 11-cv-3019-IEG (POR), 2012 WL 1132961, at *9 (S.D. Cal. 2012) (60 days).

The Court is compelled to address the Supreme Court's decision in *Jennings v. Rodriguez*, in which the Supreme Court overruled the Ninth Circuit's interpretation of section 1226(a) to read in a requirement of periodic bond hearings every six months for aliens detained under that provision. 138 S. Ct. at 846–48. Notably, the Ninth Circuit had linked its rationale for providing bond hearings to aliens detained under section 1231(a)(6)—like Petitioner—to its decisions regarding the rights of those detained under section 1226(a). *See Diouf*, 634 F.3d 1084. The Supreme Court, however, noted that section 1231(a)(6) "differs materially from" section 1226(a). *Jennings*, 138 S. Ct. at 843. Unlike section 1226(a), "[s]ection 1231(a)(6) could plausibly be read to contain an 'implicit time limit.'" *Hoang v. Tran*, 333 F. Supp. 3d 984, 995 (C.D. Cal. 2018) (quoting *Jennings*, 138 S. Ct. at 843–44). Consequently, district courts within the Ninth Circuit have consistently held "that *Diouf* remains good law post-*Jennings*." *See id.*

Here, Petitioner is entitled to a bond hearing before an IJ. Petitioner is detained under section 1231(a)(6) as a removable alien. Accordingly, the standards articulated in *Diouf* are appropriate. As noted above, Petitioner has been held in prolonged detention—the unrebutted evidence before the Court shows Petitioner has been detained for more than two years since the IJ's initial removal decision. *See* Pet. at 16. The periodic decisions to

continue detention rendered by ICE are subject to challenge before an IJ. *See Diouf*, 634 F.3d at 1092. Accordingly, the Court finds that Petitioner is entitled to a bond hearing before an IJ within thirty (30) days of the date on which this Order is electronically docketed.

## IV. Immigration Judge Assignment

At the bond hearing, the IJ must engage in a multi-layered analysis. First, the IJ must determine whether removal of Petitioner is "reasonably foreseeable." *See Zadvydas*, 533 U.S. at 699. If the IJ finds in the negative, detention is no longer authorized, and Petitioner should be released. *See id.* If the IJ finds that Petitioner's removal is "reasonably foreseeable," it must proceed to the second level of analysis and consider the merits of granting him release on bond.

The IJ must determine whether the Government has demonstrated, by clear and convincing evidence, that Petitioner presents a flight risk or a danger to the community. *See Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 1024, 1032–33 (W.D. Wash. 2019) (citing *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011)) (additional citation omitted). In *Singh*, the Ninth Circuit identified the nine factors to be analyzed by an IJ in a bond determination:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Singh*, 638 F.3d at 1206 n.5 (citation omitted). Upon weighing these factors, if the IJ finds that the Government has failed to show by clear and convincing evidence that Petitioner is either a flight risk or a risk to the community, Petitioner should be granted bond.

# CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's Petition for Writ of Habeas Corpus. Consequently, **IT IS HEREBY ORDERED** that:

1. Petitioner's request for immediate release is **DENIED**; and
2. Respondents **SHALL PROVIDE** Petitioner a hearing within <u>thirty (30) days</u> of the electronic docketing of this Order before an immigration judge with the authority to release Petitioner or grant him bond.

**IT IS SO ORDERED.**

Dated: October 16, 2019

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge